UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

EDUARDO RODRIGUEZ,

    Plaintiff,
vs.

BCC FOOD HALL LLC;
BCC FOOD OPERATOR LLC; and
JACOPO GIUSTINIANI, individually,

    Defendants.
_____/

## **COMPLAINT**

Plaintiff, EDUARDO RODRIGUEZ, brings this action against Defendants, BCC FOOD HALL LLC; BCC FOOD OPERATOR LLC; and JACOPO GIUSTINIANI (collectively "Defendants"), and alleges as follows:

1. This is an action for damages brought by Plaintiff, EDUARDO RODRIGUEZ, against Defendants, under, *inter alia*, the Fair Labor Standards Act 29 U.S.C. §§ 201-219 ("FLSA"). Jurisdiction is proper and is conferred on this Court by, *inter alia*, 28 U.S.C. §1331. Venue is proper because the events giving rise to this claim arose in this Judicial District.

2. Defendants operate La Centrale – Italian Food Hall ("La Centrale") restaurant and food hall located at or around 601 S Miami Ave Suite 181-C, Miami, Florida 33131.

3. At all times material hereto, Plaintiff was a Florida resident and resident of this Judicial District and an "employee" of Defendants as defined by the applicable law referenced herein.

4. At all times material hereto, Defendant, BCC FOOD HALL LLC ("FOOD HALL"), was a Florida limited liability company with its principal place of business in South Florida in this Judicial District at or about 66 West Flagler Street, Suite 1002, engaged in commerce in the field of restaurant and bar operations, at all times material hereto was the

"employer" of Plaintiff as that term is defined under the applicable law referenced herein, engaged along with its employees in interstate commerce, and has annual gross sales and/or business volume of Five Hundred Thousand ($500,000.00) Dollars or more.

5. At all times material hereto, Defendant, BCC FOOD OPERATOR LLC ("FOOD OPERATOR"), was a Florida limited liability company with its principal place of business in South Florida in this Judicial District at or about 66 West Flagler Street, Suite 1002, engaged in commerce in the field of restaurant and bar operations, at all times material hereto was the "employer" of Plaintiff as that term is defined under the applicable law referenced herein, engaged along with its employees in interstate commerce, and has annual gross sales and/or business volume of Five Hundred Thousand ($500,000.00) Dollars or more.

6. At all times material hereto, Defendant, JACOPO GIUSTINIANI, acted directly and indirectly in the interests of FOOD HALL and/or FOOD OPERATOR and, thus, was an employer, as that term is defined under the FLSA, including, *inter alia*, under Section 203(d).

7. At all times material hereto, Plaintiff was an employee of Defendants protected by the FLSA, 29 U.S.C. §§ 201-219, and Defendants were employers of Plaintiff subject to the FLSA, as each are defined under the FLSA.

8. FOOD HALL and FOOD OPERATOR (hereinafter "F&F") are covered by the FLSA's Enterprise Coverage.

9. The Defendants acted jointly as joint employers of Plaintiff. All Defendants are considered Plaintiff's employers; joint employers; acted as joint employers and/or in a joint venture. As to the Defendants:

  a. Defendants may be deemed to share control of Plaintiff, directly or indirectly, by reason of the fact that Defendants controlled, is controlled by, or is under common control with the other Defendants;

  b. The Defendants acted directly or indirectly in the interest of one another in relation to Plaintiff; performed administrative functions in relation to Plaintiff, such as handling payroll, providing benefits, and providing necessary facilities and equipment;

  c. The Defendants controlled Plaintiff's employment condition; directed, controlled, and/or

supervised work performed.  Further, Plaintiff's work was integral to their business; and/or Plaintiff worked on premises owned and/or controlled by them;

d. The Defendants share common ownership; have common owners; have overlapping officers, directors, executives, managers and/or employees; are economically dependent on one another; and/or their operations are inter-mingled and they share control over operations, including hiring/firing, payroll, advertising, overhead, and/or costs;

e. The Defendants supervise one another's work; share supervisory authority for the Plaintiff; share the employees as a pool of employees available to both of them; share clients, customers, agreements, and/or contracts; and/or

f. The Defendants were not completely disassociated with respect to the employment of Plaintiff and/or there was an arrangement between the employers to share Plaintiff's services.

10. In justifiable reliance upon Defendants' representations and promises, Plaintiff accepted employment and began working for Defendants providing hospitality services. The work performed by the Plaintiff, including serving, was directly essential to the business performed by Defendants.

11. Defendants knowingly, willfully, and improperly refused to pay Plaintiff his/her legally entitled wages.  Plaintiff was not paid at all for a significant amount of time worked despite having full knowledge of and being notified of same by Plaintiff.  Defendants were fully aware that they were not properly paying Plaintiff.  The Defendants intentionally and willfully hid this fact and did not pay Plaintiff the full and proper wages throughout Plaintiff's employment.

12. Plaintiff was often not paid any 'commissions' for hours worked that overlapped a subsequent shift (*e.g.,* if Plaintiff worked 1 hour past lunch into the dinner shift, Plaintiff would often not be paid for the dinner shift and *vice versa*).

13. The Defendants did not enter the actual time worked into pay calculation sheets but instead used whole, rounded, incorrect, and/or arbitrary numbers that did not match the actual time worked.  The result was that employees were paid based on the incorrect time and that each employee was, thus, not correctly paid according to any set formula.

14. Defendants did not consistently keep records of which employees were working on

which checks; which employees were linked to a check when shifts changed; which bars, restaurants, and food and drink sales were part of the commission scheme; and whether tips were included. Event pay and to-go orders were not properly accounted for in the commission 'scheme'.

15. Upon information and belief, Defendants hid and destroyed and/or attempted to hide and destroy records setting forth the details of this scheme.

16. Amounts that were reduced as 'comps' (check amounts that were reduced or eliminated, *e.g.*, for friends of management) were reduced from the amounts payable to employees—amounting to an improper and arbitrary reduction of compensation from employees.

17. To the extent Defendants improperly termed tips as 'service charges' due to the discretionary nature of same, Plaintiff is owed Plaintiff's full portion of those tips. Tips belong to the employee, not the employer and cannot be retained by the employer.

18. Plaintiff has complied with all conditions precedent to bringing this suit, or same have been waived or abandoned.

19. Plaintiff has retained the services of the undersigned to represent him/her in this action and is obliged to pay for the legal services provided.

20. Plaintiff's full employment records are in Defendants' possession and examination of the earnings statements; paystubs; and other documents, together with discovery of amounts (including cash tips) concealed, is necessary in order to calculate full and precise damages.

## COUNT I: FLSA VIOLATION

(all Defendants)

21. Plaintiff re-alleges Paragraphs 1 through 20 as if fully set forth herein.

22. Defendants failed to pay Plaintiff overtime due pursuant to the FLSA as described in Section 207(a)(1) of the FLSA.

23. Section 7 of the FLSA provides in pertinent part that "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods

4

for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

24. Defendants failed to pay Plaintiff at least 1.5 x Plaintiff's 'Regular Rate' of pay for all hours worked in excess of forty hours per week. Between the date of approximately December 11, 2017 through approximately June 6, 2018, Plaintiff worked approximately more than 43 hours a week but was not paid full overtime for the hours worked in excess of 40 hours each week.

25. Defendants willfully and intentionally refused to pay Plaintiff overtime wages as required by the FLSA, as Defendants knew of the overtime requirement of the FLSA and intentionally and recklessly failed to comply with same.

26. Defendants' actions constitute a willful violation of the FLSA. This also includes, *but is not limited to,* all dates of work for which the last element of the FLSA violation occurred on or after Plaintiff's first day of work. Plaintiff continues to work for Defendants.

27. The method of calculating 'Regular Rate' and 'Overtime Rate' is set forth in the FLSA; the Overtime Rate is 1.5 x the 'Regular Rate'. Between approximately December 11, 2017 through June 6, 2018, Plaintiff was never paid overtime hours at an FLSA 'Overtime Rate' at all. Plaintiff is owed the difference between the amount *he was actually paid* and the amount that *he should have been paid* if he had been paid overtime at the correct overtime rate for all overtime hours worked.

28. Defendants failed to pay overtime to Plaintiff by, among other devices, using a fictional commission scheme to pay an arbitrary rate under the guise of a 207(i) commission exemption ("7(i) exemption"). In order for Defendants to use the 7(i) exemption, they must use a 'bona fide commission rate' and—*must actually utilize the commission rate*—in paying the employee.

29. Importantly, the 7(i) exemption affirmative defense requires, among other things, that the Defendants (i) used an actual methodology or formula that it can fully articulate and prove

5

by clear and affirmative evidence (*the formula to calculate compensation—not merely some amount or percent charged to the customer*); (ii) it implemented and paid the employee using this actual methodology or formula by clear and affirmative evidence; (iii) that this formula and methodology had all of the required characteristics of a 'bona fide commission'; and (iv) that all of the foregoing was used, implemented, and paid such that Defendant paid Plaintiff a 'bona fide commission' for all of Plaintiff's work. [1]

30. Defendants did not pay Plaintiff any overtime whatsoever, despite that he worked over forty hours per week during many, if not all, of these weeks. The 'commissions' were in fact not paid according to any formula or rate as to Plaintiff.

31. Moreover, upon information and belief, the Defendants included credit card tips in its sham calculation of sham 'commissions', an act that is specifically prohibited (tips are specifically excluded as an amount that cannot be used in a bona fide commission calculation/in satisfying the 7(i) exemption) and constitutes improper commingling; they must be separated but were not by the Defendants.

32. Defendants did not instruct customers that service charges were revenue of the company and customers believed that the service charges were gratuities.

33. Defendants permitted customers to exercise discretion over service charges by reducing and/or removing service charges during Plaintiff's employment.

34. Defendants failed to record cash tips. Failure to record cash tips was, *inter alia*, a direct violation of the FLSA recordkeeping requirements.

35. Plaintiff was not an exempt employee under the FLSA; even if he was supposed to

---

[1] If all of the 'bona fide commission' requirements are met and the employee is actually paid according to the 'bona fide commission rate', the 7(i) Exemption may potentially apply if (1) the employer is a retail or service establishment; (2) the regular rate of pay of the employee is in excess of one and one-half times the minimum hourly rate applicable to him under 29 U.S.C. § 206; and (3) more than half of the employee's compensation for a representative period (not less than one month) represents commissions on goods or services; and (4) all other FLSA requirements are satisfied.

be paid according to an articulable 'bona fide commission rate' in furtherance of the 7(i) exemption, Plaintiff was not actually paid pursuant to a 'bona fide commission rate.' That is, if a bona fide commission rate existed, he was not paid the amounts due under the bona fide commission rate. In other words, even if a 'bona fide exemption rate' existed in theory: *because he was not actually paid pursuant to the rate*, failure to pay pursuant to the rate renders both the rate and the exemption nothing more than an irrelevant fiction and 'extinguishes' the exemption.

36. The FLSA provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages plus an additional equal amount in liquidated damages (doubling), plus costs, interest and reasonable attorneys' fees. As a result of the Defendants' violations, Plaintiff is entitled to unpaid wages plus an additional equal amount in liquidated damages along with costs, interest and reasonable attorneys' fees. Plaintiff seeks reasonable attorneys' fees and costs under the FLSA and to the fullest extent permissible under all applicable law, including under 29 U.S.C. § 216(b) and all other applicable law. Plaintiff claims the highest amount owed under this cause of action. Where Plaintiff is owed 1.5 x 'Regular Rate'; Minimum Wage; unpaid tips; or some other amount for any particular time worked, Plaintiff seeks the highest amount as allowed by law; for weeks in which Plaintiff was not paid FLSA minimum wages, Plaintiff seeks full FLSA minimum wage.

37. Plaintiff's burden to prove particular aspects of his claim is reduced—*as provided by applicable law*—by Defendants' failure to keep proper records and failure to comply with FLSA recordkeeping requirements; the Defendants had time clock and/or time recordation errors; failed to keep proper FLSA records for 'retroactive' payments; failed to record cash tips; failed to keep a proper record of purported commissions; lost and/or destroyed records; failed to keep notations as to which employees were exempt; failed to keep records as to alleged commission rates; failed to keep records as to 'representative periods' for the purported 7(i) exemption; failed to record all days and hours worked; and/or otherwise failed to keep proper records.

**WHEREFORE**, Plaintiff demands judgment against all Defendants for damages suffered

as a result of the alleged lost earnings; liquidated damages if applicable; other damages together with all taxable court costs, attorneys' fees; prejudgment interest if applicable; Trial by Jury; a finding that all Defendants are jointly and severally liable; and such other relief as the Court may deem just and proper.

## COUNT II: BREACH OF EMPLOYMENT AGREEMENT

(Defendant, BCC Food Hall LLC, and Defendant, Food Operator LLC)

**38.** Plaintiff re-alleges Paragraphs 1-5 and 9-20 as if fully set forth herein.

**39.** At all times material hereto, Plaintiff was an employee of FOOD HALL and FOOD OPERATOR (hereinafter "F&F"), and F&F were employers of Plaintiff.

**40.** Plaintiff worked as a hospitality worker. He worked approximately more than 43 hours per week.

**41.** F&F recklessly, willfully, and/or improperly denied Plaintiff proper compensation.

**42.** Plaintiff is owed no less than approximately $60 in unpaid wages for each week worked by Plaintiff due to F&F's breach of the employment agreement (precise amounts owed and precise dates to be discovered).

**43.** Plaintiff entered into an oral and/or written employment agreement with F&F to provide hospitality services at La Centrale; Plaintiff fully and/or substantially performed under this employment agreement, but F&F failed to perform: [2]

   a. F&F implemented a commission scheme. Plaintiff was not fully and properly paid all wages owed under this commission scheme. To the extent this commission scheme was based on 'sales', Plaintiff is owed his portion of said sales. Plaintiff was promised and agreed to be paid and is owed no less than 10% of all revenue for all checks correlating to Plaintiff but was paid far less; Plaintiff is owed no less than $2,000. F&F directly reduced Plaintiff's pay via, *inter alia*, 'comps' for other employee mistakes and by completely writing off checks without reimbursing Plaintiff for his percentage. F&F concealed the amount of sales in order to underpay Plaintiff;

   and/or

---

[2] The full terms of this agreement document may be in F&F's possession.

8

b. To the extent this commission scheme was based on total 'service charges', Plaintiff is owed his portion of service charges. F&F concealed the amount of sales in order to underpay Plaintiff. Plaintiff was promised and agreed to be paid and is owed no less than 100% of all service charge commissions for all checks correlating to Plaintiff (precise amounts to be determined); Plaintiff is owed no less than $2,000. F&F directly reduced Plaintiff's pay via, *inter alia*, 'comps' and by completely writing off checks without reimbursing Plaintiff for his percentage.

44. F&F failed to fully compensate Plaintiff:

a. F&F failed to calculate 'commissions' properly, including by using incorrect time worked to calculate commission distributions;

b. Upon information and belief, there were repeated corrections of past hours worked submitted by employees but F&F failed to re-calculate the commissions for the days affected by the changed hours.

c. Further, the payment did not fully account for time worked that would 'bleed over' from one shift to another (e.g., if an employee worked 1 hour into dinner, that employee would often not be paid 'commission' for the dinner service);

d. To the extent the payment scheme distributed 'cash over-tips' and 'credit card over-tips', Plaintiff is owed his portion of 'cash over-tips' and 'credit card over-tips';

e. To the extent Plaintiff is owed 'cash tips' separate and apart from the commission scheme, *e.g.*, if Plaintiff worked at a service bar or an event under a separate payment scheme, Plaintiff is owed all unpaid 'cash over-tips'; and/or

f. To the extent this payment scheme was based on hours worked, Plaintiff is owed for all unrecorded hours and for all underpaid hours.

45. The unpaid wages and underpaid wages owed constitute a Florida unpaid wage violation, which triggers Section 448.08, Florida Statutes. Under established Florida law, for Statute of Limitations purposes, 'Commissions' are not considered wages and, thus, are subject to a 4 year, rather than a 2 year unpaid wages statute of limitations.[3] On the other hand, 'Commissions' are considered wages for purposes of the attorneys' fees and costs provisions of

---

[3] "[C]ompensation in the form of commissions does not fall within the category of wages in the context of section 95.11(4)(c)." <u>Barnes Surgical Specialties, Inc. v. Bradshaw</u>, 549 So.2d 1189, 1191 (Fla. 2d DCA 1989)

Fla. Stat. § 448.08. [4]

46. Plaintiff seeks reasonable attorneys' fees and costs which may be awarded pursuant to Section 448.08, Florida Statutes, and to the fullest extent permissible under all applicable law. Plaintiff claims the highest amount owed under this cause of action.

47. This is **not** a claim for minimum wages under the Florida Minimum Wage Act or Florida Minimum Wage Amendment.

**WHEREFORE**, Plaintiff demands judgment against Defendants, FOOD HALL and FOOD OPERATOR, for damages suffered as a result of the alleged lost earnings; liquidated damages if applicable; other damages together with all taxable court costs, attorneys' fees; prejudgment interest if applicable; Trial by Jury; a finding that FOOD HALL and FOOD OPERATOR are jointly and severally liable; and such other relief as the Court may deem just and proper.

### COUNT III: UNJUST ENRICHMENT

(Defendant, BCC Food Hall LLC, and Defendant, Food Operator LLC)

48. Plaintiff re-alleges Paragraphs 1-5 and 9-20 as if fully set forth herein.

49. Plaintiff seeks damages for unjust enrichment in the alternative as to each hour worked. [5]

50. Plaintiff performed services for F&F.

---

[4] "Unpaid commissions are considered wages for purposes of section 448.08." Hingson v. MMI of Florida, Inc., 8 So.3d 398 (Fla. 2d DCA 2009) citing Gulf Solar, Inc. v. Westfall, 447 So.2d 363, 367 (Fla. 2d DCA 1984); D.G.D., Inc. v. Berkowitz, 605 So.2d 496, 498 (Fla. 3d DCA 1992)

[5] Restaurants often intentionally avoid forming an employment contract in order to make it more difficult for employees to prove what they are owed. While the restaurant may succeed in avoiding the formation of a contract, an implied contract may nonetheless exist.

Plaintiff seeks damages for unjust enrichment in the alternative. And in the event Plaintiff's employment is partially encompassed by a contract, Plaintiff seeks unjust enrichment for the portion not encompassed by said contract (*e.g.*, if Plaintiff was not under a contract during the first month but then was under a contract, Plaintiff seeks damages for unjust enrichment for the days in which Plaintiff was not under a contract)

51. F&F both have knowledge of the services performed for F&F by Plaintiff.

52. F&F both have voluntarily accepted and retained the benefit conferred by the services of Plaintiff.

53. F&F both have failed to pay for services and have been unjustly enriched.

54. Plaintiff suffered damages as a result.

55. The circumstances are such that it would be inequitable for F&F to retain the benefit without paying the value thereof to the Plaintiff.

56. F&F both willfully used procedures to underpay Plaintiff, including:

   a. F&F both failed to pay Plaintiff for no less than all hours worked by Plaintiff;

   b. To the extent F&F improperly kept tips, gratuities, and/or discretionary service charges, or misdirected same, this constituted tip theft and Plaintiff is owed for all such tips;

   c. F&F both improperly recalculated Plaintiff's wages retroactively, with the effect of underpaying Plaintiff (precise details to be discovered); and/or

   d. To the extent F&F implemented a 'commission' scheme, Plaintiff is owed all promised amounts under this scheme.

57. Failure to compensate Plaintiff constitutes failure to pay wages and/or commissions which trigger the attorneys' fees and costs provision of Fla. Stat. § 448.08. Plaintiff seeks attorneys' fees and costs pursuant to Fla. Stat. § 448.08 and to the fullest extent permissible under all other applicable law.

58. Plaintiff seeks reasonable attorneys' fees and costs which may be awarded pursuant to Section 448.08, Florida Statutes, and to the fullest extent permissible under all applicable law. Plaintiff claims the highest amount owed under this cause of action.

59. This is **not** a claim for minimum wages under the Florida Minimum Wage Act or Florida Minimum Wage Amendment.

**WHEREFORE**, Plaintiff demands judgment against Defendants, FOOD HALL and FOOD OPERATOR, for damages suffered as a result of the alleged lost earnings; other damages together with all taxable court costs, attorneys' fees; prejudgment interest if applicable; Trial by Jury; a finding that FOOD HALL and FOOD OPERATOR are jointly and severally liable; and such other relief as the Court may deem just and proper.

            Respectfully submitted,

            **LAW OFFICES OF PAUL A. SACK, P.A.**
            1130 Washington Avenue, Suite 3
            Miami Beach, Florida 33139
            Telephone: 305-397-8077
            Facsimile: 305-763-8057

By:   /s/ PAUL A. SACK, ESQ.
        FBN: 363103
        Primary: paul@paulsacklaw.com
        ps1619@bellsouth.net
        R. BRANDON DEEGAN, ESQ.
        FBN: 117368
        Primary: deegan@paulsacklaw.com